1  ROBERT H. ROTSTEIN (SBN 72452)
       rxr@msk.com
2  EMILY F. EVITT (SBN 261491)
       efe@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
4  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  Attorneys for Defendant
   Netflix, Inc.

7

8

9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                   WESTERN DIVISION

13

| | |
|---|---|
| AKC GLOBAL, LLC A KILLER'S CONFESSION, AND WAYLON REAVIS, | CASE NO.: 2:22-cv-08847-DSF-KS |
| | Hon. Dale S. Fischer |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION OF DEFENDANT NETFLIX, INC. TO DISMISS PLAINTIFFS' COMPLAINT, IN ITS ENTIRETY, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| NETFLIX, INC., | |
| Defendant. | |

Date:        June 12, 2023
Time:        1:30 p.m.
Ctrm:        7D

Filed:       12/06/2022
Trial Date:  None set

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 12, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Dale S. Fischer in Courtroom 7D, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Netflix, Inc. ("Netflix") will and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing Plaintiffs AKC Global, LLC's, A Killer's Confession's, and Waylon Reavis's Complaint (Dkt. 13), in its entirety, without leave to amend.

This Motion is made on the grounds that the Complaint fails to and cannot state a claim for relief under Rule 12(b)(6).

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice and Declaration of Emily F. Evitt in support thereof; all pleadings and other records on file in this action; any other matters that may be judicially noticed; and such further evidence and arguments as may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 24, 2023.

Dated: May 5, 2023                MITCHELL SILBERBERG & KNUPP LLP

By:  /s/Robert H. Rotstein
Robert H. Rotstein
Emily F. Evitt
Attorneys for Defendant Netflix, Inc

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION. ............................................................................1

II.    FACTUAL ALLEGATIONS .........................................................2

    A.   *Plaintiffs And Their Use Of "A Killer's Confession."* .........2

    B.   *Defendant Netflix And The Docuseries.* ...............................2

    C.   *Allegations Of The Complaint* ................................................5

III.   GOVERNING LEGAL STANDARDS. ........................................6

IV.   UNDER THE *ROGERS V. GRIMALDI* TEST, THE FIRST
      AMENDMENT BARS PLAINTIFFS' CLAIMS...........................7

    A.   Rogers *Squarely Applies To This Case.* .................................8

    B.   *Netflix's Use Of "The Confession Killer" Is Artistically Relevant.* .....9

    C.   *Netflix's Use Of "The Confession Killer" Does Not Explicitly
         Mislead.* ...............................................................................10

V.    PLAINTIFFS CANNOT PLAUSIBLY PLEAD LIKELIHOOD OF
      CONFUSION. ...............................................................................12

    A.   *Plaintiffs Have A Weak Mark In A Crowded Field.* ............13

    B.   *The Lack Of Relatedness Of The Goods And Services Precludes
         Any Likelihood Of Confusion.* ...............................................13

    C.   *The Parties' Marks Are Dissimilar And Encountered In
         Completely Different Ways In The Marketplace.* ....................15

    D.   *Plaintiffs Do Not Plausibly Allege Any Actual Confusion.* .....17

    E.   *The Parties' Marketing Channels Are Dissimilar.* ..............17

    F.   *The Degree Of Care Exercised By Consumers Eliminates Any
         Possibility Of Confusion.* .......................................................19

    G.   *Netflix's Intent In Selecting Its "The Confession Killer" Title Had
         Nothing To Do With Plaintiffs.* .............................................19

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS COMPLAINT IN ITS ENTIRETY**

1

# TABLE OF CONTENTS
(continued)

**Page**

    H.    *The Parties Are Unlikely To Expand Into Each Other's Sphere Of Business.* ...............................................................................................20

VI.    CONCLUSION. ............................................................................................20

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS COMPLAINT IN ITS ENTIRETY**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*AMF, Inc. v. Sleekcraft Boats*,
5
    599 F. 2d 341 (9th Cir. 1979) ..................................................................*passim*

6

*Ashcroft v. Iqbal*,
7
    556 U.S. 662 (2009) ................................................................................ 7

8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................... 6, 7, 14
9

10

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005) ................................................................. 17

11

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
12
    174 F.3d 1036 (9th Cir. 1999) ............................................................... 13

13

*Brown v. Elec. Arts, Inc.*,
14
    724 F.3d 1235 (9th Cir. 2013) .............................................. 9, 10, 11, 12

15

*Caiz v. Roberts*,
16
    382 F. Supp. 3d 942 (C.D. Cal. 2019) ............................................... 8, 11

17

*Cohn v. Petsmart, Inc.*,
    281 F.3d 837 (9th Cir. 2022) ........................................................... 16, 17
18

19

*Conte v. Newsday, Inc.*,
    2013 WL 978711 (E.D.N.Y. 2013) ...................................................... 16
20

21

*Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*,
    402 F. Supp. 3d 902 (C.D. Cal. 2019) .................................................. 13

22

*Dfinity Found. v. Meta Platforms, Inc.*,
23
    2022 WL 16857036 (N.D. Cal. Nov. 10, 2022) .................................... 19

24

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
25
    983 F.3d 443 (9th Cir. 2020) ................................................................. 10

26

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
27
    547 F.3d 1095 (9th Cir. 2008) ............................................... 9, 10, 11

28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Embarcadero Techs., Inc. v. Rstudio, Inc.*,
   105 U.S.P.Q.2d 1825 (T.T.A.B. 2013) ............................................................. 16

*Glow Indus., Inc. v. Lopez*,
   273 F. Supp. 2d 1095 (C.D. Cal. 2003) ............................................................ 19

*Groupion, LLC v. Groupon, Inc.*,
   826 F. Supp. 2d 1156 (N.D. Cal. 2011) ...................................................... 15, 18

*Hanginout, Inc. v. Google, Inc.*,
   54 F. Supp. 3d 1109 (S.D. Cal. 2014) .............................................................. 18

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
   304 F.3d 936 (9th Cir. 2002) ........................................................................... 13

*Jackson v. Netflix, Inc.*,
   506 F.Supp.3d 1007 (C.D. Cal. Dec. 9, 2020) ............................................. 9, 11

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
   725 F.2d 1240 (9th Cir. 1984) .................................................................... 15, 16

*M2 Software, Inc. v. Madacy Ent.*,
   421 F.3d 1073 (9th Cir. 2005) .................................................................... 17, 18

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ......................................................................... 8, 10

*MGFB Properties, Inc. v. Viacom Inc.*,
   54 F.4th 670 (11th Cir. 2022) .......................................................................... 15

*Murray v. Cable Nat. Broad. Co.*,
   86 F.3d 858 (9th Cir. 1996) ................................................................... 12, 13, 14

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ............................................................... 15, 18, 19

*Newton v. Thomason*,
   22 F.3d 1455 (9th Cir. 1994) ........................................................................... 14

*Novalogic, Inc. v. Activision Blizzard*,
   41 F. Supp. 3d 885 (C.D. Cal. 2013) ............................................................... 11

Mitchell
Silberberg &
Knupp LLP

6

1

## TABLE OF AUTHORITIES
<u>(continued)</u>

2

3

<u>Page(s)</u>

4

*Pascucci, Inc. v. Caffe Pascucci Torrefazione S.P.A.*,
  2011 WL 13220127 (C.D. Cal. July 8, 2011) ...................................................20

5

6

*Robinson v. Hunger Free Am., Inc.*,
  2018 WL 1305722 (E.D. Cal. Mar. 13, 2018)...................................................14

7

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ..............................................................*passim*

8

9

*Roxbury Ent. v. Penthouse Media Grp., Inc.*,
  669 F. Supp. 2d 1170 (C.D. Cal. 2009)...................................................10

10

11

*Skechers U.S.A., Inc. v. Vans, Inc.*,
  2007 WL 4181677 (C.D. Cal. Nov. 20, 2007) ...................................................20

12

13

*Stewart Surfboards, Inc v. Disney Book Grp., LLC*,
  2011 WL 12877019 (C.D. Cal. May 11, 2011)...................................................12

14

15

*Streetwise Maps, Inc. v. Vandam, Inc.*,
  159 F.3d 739 (2d Cir. 1998) ...................................................16

16

17

*Sunenblick v. Harrell*,
  895 F. Supp. 616 (S.D.N.Y. 1995) ...................................................19

18

19

*Surfvivor Media, Inc. v. Survivor Prods.*,
  406 F.3d 625 (9th Cir. 2005) ...................................................20

20

21

*Toho Co. Ltd. v. Sears, Roebuck & Co.*,
  645 F.2d 788 (9th Cir. 1981) ...................................................13, 19

22

23

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ...................................................7, 8, 9, 10

24

25

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ...................................................7

26

*Van Buskirk v. Cable News Network, Inc.*,
  284 F.3d 977 (9th Cir. 2002) ...................................................7

27

28

*VIP Prods. LLC v. Jack Daniel's Props., Inc.*,
  953 F.3d 1170 (9th Cir. 2020) ...................................................8

Mitchell
Silberberg &
Knupp LLP

7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Winchester Mystery House, LLC v. Global Asylum, Inc.*,
  210 Cal. App. 4th 579 (2012) ............................................................... 9

*Zella v. The E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007) .............................................. 7

## STATUTES

Lanham Act
  15 U.S.C. § 1114 ...................................................................*passim*
  15 U.S.C. § 1125(a) ...................................................... 1, 12

Cal. Bus. and Prof. Code §17000 ........................................ 1, 6

## OTHER AUTHORITIES

Federal Rule of Civil Procedure, Rule 12(b)(6) ......................... 1, 2, 6, 7

2 McCarthy on Trademarks and Unfair Competition
  § 11:85 (5th ed.) ....................................................... 13

United States Constitution, First Amendment ....................................*passim*

Mitchell
Silberberg &
Knupp LLP

MOTION TO DISMISS COMPLAINT IN ITS ENTIRETY

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this meritless action for trademark infringement and related claims, Plaintiffs allege that the title of Netflix's 2019 docuseries *The Confession Killer* (the "Docuseries") violates the Lanham Act, 15 U.S.C. §§ 1114, 1125, and California's unfair competition law by infringing upon the name of their rock band, "A Killer's Confession" ("AKC").  Because the Complaint flouts binding Ninth Circuit authority, it should be dismissed under Federal Rule of Civil Procedure 12(b)(6) without leave to amend.

***First***, the First Amendment protects Netflix's use of the title "The Confession Killer."  *See Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).  The Docuseries tells the story of Henry Lee Lucas, who confessed to hundreds of murders in the United States.  Years later, DNA testing proved that most of these confessions were lies.  Because Netflix's use of the title easily clears the requirement of minimal artistic relevance and does not explicitly mislead as to the source or the content of the Docuseries, the First Amendment trumps any alleged trademark infringement.

***Second***, the Complaint should be dismissed for the independent reason that, under the Ninth Circuit's "likelihood of confusion" test set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F. 2d 341 (9th Cir. 1979), consumers are unlikely to be confused between Plaintiffs' use of "A Killer's Confession" for sound recordings and live musical performances and Netflix's use of "The Confession Killer" as the title of a true crime documentary miniseries.

For both of these independently sufficient reasons, the Complaint should be dismissed with prejudice.

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS COMPLAINT IN ITS ENTIRETY**

1

## II.    FACTUAL ALLEGATIONS[1]

### A.    *Plaintiffs And Their Use Of "A Killer's Confession."*

Plaintiff AKC is an alternative heavy metal band from Cleveland, Ohio. Complaint ¶ 2.  Plaintiff Waylon Reavis is a member of AKC and its lead singer. Complaint ¶ 3.  Plaintiffs allege that they have used the term "A Killer's Confession" in connection with live performances, sound recordings, and related merchandise since late-2016.  Complaint ¶¶ 10, 11.[2]

### B.    *Defendant Netflix And The Docuseries.*

In or around December of 2019, Netflix—an entertainment company that streams television and film content to millions of subscribers in countries around the world (Complaint ¶ 4)—made available for streaming the series *The Confession Killer*, a five-episode docuseries that tells the story of Henry Lee

---

[1] As is appropriate on a motion to dismiss under Rule 12(b)(6), the summary of the factual allegations comes from the face of the Complaint, material incorporated by reference therein (including, but not limited to, the Docuseries), and other material that may be judicially noticed.  As set forth in the contemporaneously filed Request for Judicial Notice ("RJN"), the Court may consider these materials at this stage under applicable law.

[2] Plaintiffs have released songs with titles such as "Roots Bloody Roots," "Monster," "Final Breath," and "Knife from Behind."  *See* AKillersConfession, *A Killer's Confession – Roots Bloody Roots (Official Video)*, YOUTUBE (Feb. 23, 2023), https://www.youtube.com/watch?v=hiRiOTYsYj0; *A Killer's Confession – Remember*, DISCOGS, https://www.discogs.com/release/20594368-A-Killers-Confession-Remember (last visited May 4, 2023) (listing songs titled "Knife from Behind" and "Monster"); *A Killer's Confession – Unbroken*, DISCOGS, https://www.discogs.com/release/10382307-A-Killers-Confession-Unbroken (last visited May 4, 2023) (listing song titled "Final Breath").  Plaintiffs' merchandise encourages people to "kill pedophiles," and in 2017, Plaintiffs announced an upcoming "Year of the Killers Tour."  *See A Killer's Confession*, SHOPIFY, https://akillersconfession.myshopify.com/collections/frontpage/products/kill-all-pedophile (last visited May 4, 2023); *A Killer's Confession Announces "Year of the Killers Tour,"* DIGITAL TOUR BUS (Jan. 6, 2017), https://www.digitaltourbus.com/news/killers-confession-announces-north-american-tour/.

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS COMPLAINT IN ITS ENTIRETY**

Lucas, a convicted serial killer (the "Docuseries").  Docuseries, RJN, Ex. A; Complaint ¶¶ 15, 19.  Lucas became infamous for falsely confessing to approximately 600 murders in the 1980s.  Docuseries, RJN, Ex. A.  Many unsolved cases were prematurely closed based on Lucas's false confessions.  Docuseries, RJN, Ex. A.  Ultimately, DNA evidence proved the falsity of many of Lucas's confession.  Docuseries, RJN, Ex. A.

Netflix's name and logo are uniformly present on the page of its streaming platform where the Docuseries can be viewed, and on its marketing materials related to the Docuseries.  *See*, *e.g.*, Complaint ¶ 8 ("***Defendants'*** marketing, promotion, advertising, distribution, licensing, and offering of the **'*Netflix Original Series…The Confession Killer*'** on its platform");[3] *id.* ¶ 32 ("Defendant's advertising, promotion, distribution, and licensing of ***Netflix's 'The Confession Killer' series***"); Complaint, Ex. 2 (Dkt. 13-2) (advertisement for the Docuseries that expressly identifies it as "A NETFLIX ORIGINAL DOCUMENTARY SERIES" and additionally features Netflix's bright red NETFLIX® logo); *see also The Confession Killer*, NETFLIX (2019), https://www.netflix.com/title/80213588 ("Watch The Confession Killer | Netflix Official Site"); Netflix, *The Confession Killer | Now Streaming | Netflix*, FACEBOOK (Dec. 6, 2019), https://www.facebook.com/netflixus/videos/the-confession-killer-now-streaming-netflix/442208653386474/.

The Docuseries illustrates how the Lucas story spiraled from a by-the-book murder case into a media frenzy in which Lucas and his handlers, the Texas Rangers, enabled confessions that shut down numerous departments' botched or incomplete investigations.  Docuseries, RJN, Ex. A.  As part of that story, the Docuseries begins with a recorded confession by Lucas.  Docuseries, RJN, Ex. A,

---

[3] Unless noted, all emphasis is added, and all citations and quotation marks omitted.

Mitchell
Silberberg &
Knupp LLP

3

Episode 1 (~00:18-00:34).   The Docuseries also features copies of Lucas's real

confession notes, as shown below:



Docuseries, RJN, Ex. A, Episode 1 (~13:30-13:51).  As is evident from a visual

comparison between the handwriting in the confession note above (Docuseries,

RJN, Ex. A, Episode 1 (~13:30-13:51)) and the font of the title of the Docuseries

as displayed on Netflix's platform and marketing materials (Complaint, Ex. 2 (Dkt.

13-2)), the latter appears to be derived from the former.

Before the Docuseries aired—and before Plaintiffs starting using "A Killer's

Confession" in or around September of 2016—there were many works referring to

Lucas as "The Confession Killer."  Examples include a November 7, 2012 article

published by the *Texas Observer* titled "Highway Injustice," which referenced

"[i]nfamous 'Confession Killer' Henry Lee Lucas" (RJN, Ex. B) (available at

https://www.texasobserver.org/highway-injustice/), and a February 2016 article

published by *The Line Up* titled "Henry Lee Lucas: The Confession Killer" (RJN,

Ex. C) (available at https://the-line-up.com/henry-lee-lucas-confession-killer); *see*

*also* "Henry Lee Lucas: The Confession Killer" (1995), IMDB,

https://www.imdb.com/title/tt0854012/ (last visited Apr. 28, 2023) (episode of

television series *The Serial Killers* featuring Lucas's story).

1    In addition, many entertainment programs unconnected to Netflix's

2    Docuseries have used the common terms "killer" and "confession" in their titles—

3    some decades before Netflix (or Plaintiffs) used such terms. *See*, *e.g.*, *Confessions*

4    *of a Serial Killer* (1985), IMDB, https://www.imdb.com/title/tt0092776/ (last

5    visited Apr. 28, 2023); *Confessions of a Killer: Nightmare in Suburbia* (2012),

6    IMDB, https://www.imdb.com/title/tt2510962/ (last visited May 4, 2023);

7    *Confession Killers* (2019), APPLE PODCASTS,

8    https://podcasts.apple.com/us/podcast/156-the-confession-killers-henry-lee-lucas-

9    and-ottis-toole/id1156343076?i=1000449157447 (last visited May 4, 2023).

10   **C.    *Allegations Of The Complaint.***

11   On March 16, 2021—nearly a year and a half after the Docuseries

12   premiered, and well *after* Lucas's moniker "The Confession Killer" was coined—

13   Plaintiffs received a trademark registration for their "A Killer's Confession" logo.

14   Complaint ¶ 18, n.2, and Ex. 1 (Dkt. 13-1); Trademark Registration No. 6,292,618

15   (the "AKC Logo"). The AKC Logo consists of "the stylized wording 'A

16   KILLER'S CONFESSION' with stylized droplets around the wording." *Id.* The

17   AKC Logo covers the following services:

18           Entertainment services in the nature of presenting live

19           musical performances; Entertainment, namely, live music

20           concerts; Entertainment, namely, live performances by a

21           musical band; live performances by a musical group;

22           Entertainment in the nature of live audio performances

23           by a musical artist; Providing a series of online non-

24           downloadable audio recordings by a musical artist;

25           Entertainment services, namely, providing online non-

26           downloadable music recordings; Entertainment services,

27           namely, providing non-downloadable series of music

28

Mitchell
Silberberg &
Knupp LLP

5

1    recordings; Providing a series of online non-

2    downloadable music videos by a musical artist.

3  *Id.*[4]  Plaintiffs do not allege that they have ever applied to register the

4  word mark A KILLER'S CONFESSION alone.  *See generally*

5  Complaint.

6    Plaintiffs initiated this action on December 6, 2022,[5] alleging claims for

7  relief for purported violations of the Lanham Act, and for unfair competition and

8  "unfair and deceptive acts" under California Business and Professions Code

9  §17000.  All three claims for relief arise out of Netflix's use of the words "The

10  Confession Killer" in the title of the Docuseries, and out of the ***font style*** in which

11  the title is written on Netflix's platform and marketing materials.  Plaintiffs do ***not***

12  allege that Netflix used the title "The Confession Killer" to trade off of, or to

13  intentionally cause confusion with, Plaintiffs' band name.  Rather, Plaintiffs allege

14  that "[t]here has been actual confusion as to the origin between AKC and Netflix's

15  ['The Confession Killer'] . . . which has ranged from active boycotting of AKC on

16  the erroneous belief . . . that AKC is a supporter of serial killers, to actual death

17  threats against AKC members . . . to the continued interviews in which AKC is

18  associated with an unwavering support for serial killers, in particular of Henry Lee

19  Lucas, the subject of Netflix's series."  Complaint ¶¶ 18, 19.

20  **III.   GOVERNING LEGAL STANDARDS**

21    To state a valid claim for relief, a plaintiff must provide "more than labels

22  and conclusions, and a formulaic recitation of the elements of a cause of action will

23  not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must

24  contain "sufficient factual matter, accepted as true, to state a claim to relief that is

25  _____

26  [4] The registration for the AKC Logo only covers entertainment services;
merchandise is not included.  *Id.*

27  [5] On January 5, 2023, the Court struck the original complaint because of various
deficiencies.  Dkt. 10.  Plaintiffs filed the operative complaint (the "Complaint";
28  Dkt. 13), on January 10, 2023.

Mitchell
Silberberg &
Knupp LLP

6

plausible on its face" to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court is not required to accept as true a "legal conclusion couched as a factual allegation." *Id.* (*quoting Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court may take judicial notice of "documents [such as copies of works] which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'" *Zella v. The E.W. Scripps Co*., 529 F. Supp. 2d 1124, 1128-29 (C.D. Cal. 2007). Moreover, "even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). And, where incorporation by reference applies, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

## IV.  UNDER THE *ROGERS V. GRIMALDI* TEST, THE FIRST AMENDMENT BARS PLAINTIFFS' CLAIMS.

Because the First Amendment protects title selection for works of entertainment, courts in this Circuit do not apply the traditional "likelihood of confusion" test when the allegedly infringing use is in the title of an expressive work. *Twentieth Century Fox Television v. Empire Distrib., Inc.,* 875 F.3d 1192, 1196 (9th Cir. 2017). Instead, the plaintiff first must overcome the two-part test articulated in *Rogers v. Grimaldi*, 875 F.2d 994, and its progeny. *Id.*

In *Rogers*, actor Ginger Rogers brought trademark and right of publicity claims against the producers of a film titled *Ginger and Fred*, about two fictional Italian cabaret performers. *Rogers*, 875 F.2d at 996-97. The court affirmed the dismissal of all of Rogers' claims, holding that "the [Lanham] Act should be construed to apply to artistic works only where the public interest in avoiding

consumer confusion outweighs the public interest in free expression." *Id.* at 999. The *Rogers* court held that the balance between trademark rights and the First Amendment "will normally not support application of the [Lanham] Act unless [1] the title has **no artistic relevance** to the underlying work whatsoever, or, [2] if it has some artistic relevance, unless the title **explicitly misleads** as to the source or the content of the work." *Id.*

The *Rogers* court also confirmed that, when the use of a trademark implicates First Amendment rights, the relevant inquiry is **not** whether some consumers might, hypothetically, be confused by the defendant's use. *Id.* at 1001. Rather, even if "some members of the public would draw the incorrect inference" that the plaintiff sponsored or was affiliated with the work, "that risk of misunderstanding, not engendered by any overt claim … is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act." *Id.* *Rogers* has been embraced by the Ninth Circuit. *See, e.g.*, *Empire*, 875 F.3d at 1196; *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002).[6]

Under the *Rogers* test, once the defendant has made a threshold legal showing that its allegedly infringing use is part of an expressive work, the plaintiff bears the burden of proving that the defendant's use of its alleged trademark (1) has no artistic relevance or (2) is explicitly misleading. *Empire*, 875 F.3d at 1196. The *Rogers* test applies just as forcefully to claims of reverse confusion as it does to ordinary "forward" confusion. *See Caiz v. Roberts*, 382 F. Supp. 3d 942, 948-49 (C.D. Cal. 2019). Because, as set forth below, all of Plaintiffs' claims are subject

---

[6] The fact that the Supreme Court is reviewing the Ninth Circuit's decision in *VIP Prods. LLC v. Jack Daniel's Properties, Inc.*, 953 F.3d 1170 (9th Cir. 2020), *cert. granted*, ─── U.S. ───, 214 L.Ed.2d 271 (2022) (No. 22-148) to determine whether the application of *Rogers* was correct in that case, should have no impact on the disposition of the instant motion. **First**, *Rogers* is still the law under binding Ninth Circuit precedent. **Second**, even putting *Rogers* aside, this Court can dismiss this case—and grant the Motion in Netflix's favor—based on the *Sleekcraft* analysis in Section V, *infra*, alone.

**MOTION TO DISMISS COMPLAINT IN ITS ENTIRETY**

Mitchell
Silberberg &
Knupp LLP

1  to *Rogers*, and Plaintiffs cannot meet their burden of proof on either of the two

2  *Rogers* prongs, their claims must be dismissed.

3      **A.**    **Rogers *Squarely Applies To This Case.***

4      The *Rogers* test is intended to encourage early, pleading-stage dismissals of

5  cases involving expressive works.  *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235,

6  1248 (9th Cir. 2013) (affirming grant of motion to dismiss Lanham Act claims on

7  *Rogers* grounds, with prejudice, holding that the use was artistically relevant and

8  that "[t]here is simply no allegation that [defendants] explicitly misled

9  consumers"); *Jackson v. Netflix, Inc.*, 506 F.Supp.3d 1007, 1016-17 (C.D. Cal.

10  Dec. 9, 2020) (granting Netflix's motion to dismiss Lanham Act claims on *Rogers*

11  grounds).  Moreover, *Rogers* applies both to federal Lanham Act claims and to

12  equivalent state law claims for unfair competition and common law trademark

13  infringement.  *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1101

14  (9th Cir. 2008) ("[T]he First Amendment defense applies equally to ESS's state

15  law claims as to its Lanham Act claim[s] . . . "); *Winchester Mystery House, LLC v.*

16  *Global Asylum, Inc*., 210 Cal. App. 4th 579, 593 (2012) (applying *Rogers* to

17  California state law unfair competition claims).

18      Here, the Docuseries is unquestionably an expressive work.  *See*, *e.g.*,

19  *Empire*, 875 F.3d at 1196 ("The *Empire* television show itself is clearly an

20  expressive work"); *Jackson*, 506 F.Supp.3d at 1015 (holding that Netflix's eight-

21  episode docuseries titled *Tiger King: Murder, Mayhem and Madness* was an

22  expressive work entitled to First Amendment protection under *Rogers*).

23      Thus, the *Rogers* framework applies to Netflix's use of the title "The

24  Confession Killer."

25      **B.**    ***Netflix's Use Of "The Confession Killer" Is Artistically Relevant.***

26      The First Amendment protects the use of a trademark in an expressive work

27  unless that use has "no artistic relevance to the underlying work whatsoever."

28

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS COMPLAINT IN ITS ENTIRETY**

*Rogers*, 875 F.2d at 999.  "In other words, the level of relevance merely must be above zero."  *E.S.S.*, 547 F.3d at 1100.

Here, Netflix's use of the title "The Confession Killer" easily clears the first *Rogers* prong.  The term "The Confession Killer" refers to self-proclaimed serial killer Lucas, who falsely confessed to hundreds of killings.  Docuseries, RJN, Ex. A.  *See Mattel*, 296 F.3d at 902 ("[T]he song title clearly is relevant to the underlying work, namely, the song itself.  As noted, the song is about Barbie and the values [the band] claims she represents.").  Lucas's "confessions" and the fact that he was a self-proclaimed "killer" play a significant role in the story that the Docuseries tells.  In addition, the title refers to Lucas's nickname, as used in various works published before Plaintiffs formed their band and ***well*** before Plaintiffs applied for trademark registration of their AKC Logo.  *See*, *e.g.*, RJN, Exs. B, C.  Thus, the title "The Confession Killer" is both logically and artistically relevant to the content of the Docuseries.  *See*, *e.g.*, *Empire*, 875 F.3d at 1198-99 (title of television series "Empire" was artistically relevant to the show's setting in the Empire State, and its subject matter, a music entertainment conglomerate, "Empire Enterprises"); *Roxbury Ent. v. Penthouse Media Grp., Inc.,* 669 F. Supp. 2d 1170, 1175 (C.D. Cal. 2009) (title "Route 66" was artistically relevant to an adult film about road trips and cross-country travel).

### C.    *Netflix's Use Of "The Confession Killer" Does Not Explicitly Mislead.*

*Rogers* and its progeny also make clear that, for an expressive use to be "explicitly misleading" under the second prong of the *Rogers* test, the allegedly infringing use must include an "'***explicit*** indication,' '***overt*** claim,' or '***explicit*** misstatement' about the source of the work."  *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020) (quoting *Brown*, 724 F.3d at 1245).  This is a "high bar."  *Dr. Seuss*, 983 F.3d at 462.  "It is key here that the creator must ***explicitly*** mislead consumers."  *Empire*, 875 F.3d at 1199 (quoting *Brown*, 724

1    F.3d at 1245) (emphasis in original).  "[T]he mere use of a trademark alone cannot

2    suffice to make such use explicitly misleading."  *E.S.S.*, 547 F.3d at 1100.

3         Critically, such an "overt claim" is required even though consumers might

4    mistakenly believe that there is some connection between the plaintiff and the

5    defendant's work.  In *Rogers*, for example, the court held that the defendants did

6    not "explicitly mislead" despite evidence that "some members of the public would

7    draw the incorrect inference that Rogers had some involvement in the film," and

8    that one of defendant's own publicists mistakenly believed that the plaintiff was

9    involved with the film.  *Rogers*, 875 F.2d at 997, 1001*; see also Brown*, 724 F.3d

10   at 1246 ("Even if Brown could offer a survey demonstrating that consumers of

11   [defendant's *Madden NFL* games] believed that Brown endorsed the game, that

12   would not support the claim that the use was explicitly misleading to consumers.").

13        Plaintiffs do not and cannot allege that ***anything*** in the Docuseries, its title,

14   or Netflix's marketing materials (including Netflix's platform, website, or key art)

15   even suggests—far less "explicitly misleads" (*i.e.*, affirmatively states or overtly

16   claims)—that the Docuseries or Netflix has any relationship whatsoever with

17   Plaintiffs.  *See Caiz*, 382 F. Supp. 3d at 951 (dismissal where plaintiff "points to no

18   evidence indicating that the defendants' use even 'implicitly suggest[s]' that the

19   album is associated with Plaintiff, let alone any evidence of an overt association.").

20        In addition, Netflix's marketing materials make clear that ***Netflix*** produced

21   the documentary.  Netflix's name and logo are uniformly present in such materials.

22   *See, e.g.*, Complaint, Ex. 2 (Dkt. 13-2); Complaint ¶ 8 (***Defendants'*** marketing,

23   promotion, advertising, distribution, licensing, and offering of the ***'Netflix***

24   ***Original Series…The Confession Killer'***"); *The Confession Killer*, NETFLIX

25   (2019), https://www.netflix.com/title/80213588 ("Watch The Confession Killer |

26   Netflix Official Site"); Netflix, *The Confession Killer | Now Streaming | Netflix*,

27   FACEBOOK (Dec. 6, 2019), https://www.facebook.com/netflixus/videos/the-

28   confession-killer-now-streaming-netflix/442208653386474/; *see also Novalogic,*

*Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 901 (C.D. Cal. 2013) (the "packaging is very clear as to its origin and source. It prominently displays the title 'CALL OF DUTY—MW3,' and identifies its makers as 'Activision,' and its affiliated studios); *Stewart Surfboards, Inc v. Disney Book Grp.*, LLC, 2011 WL 12877019, at \*7 (C.D. Cal. May 11, 2011) (book not explicitly misleading where "book jacket and spine include the Disney logo, the 'Disney Press' logo, and the Disney channel logo").

Because *Rogers* bars Plaintiffs' claims, the Complaint should be dismissed with prejudice, in its entirety. *See Brown*, 724 F.3d at 1248 (affirming dismissal with prejudice on *Rogers* grounds).

## V.   PLAINTIFFS CANNOT PLAUSIBLY PLEAD LIKELIHOOD OF CONFUSION.

Even assuming *arguendo* that Plaintiffs could overcome Netflix's *Rogers* defense, which they cannot, Plaintiffs do not (and cannot) plausibly claim that consumers are likely to be confused between, one the one hand, Plaintiffs' use of "A Killer's Confession" for sound recordings and live musical performances and, on the other hand, the title of Netflix's Docuseries. "To maintain an action for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a) and unfair competition under California law, a plaintiff must prove the defendant's use of the same or similar mark would create a ***likelihood of consumer confusion***." *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996), *as amended* (Aug. 6, 1996). Under the Ninth's Circuit's *Sleekcraft* test, the relevant factors for likelihood of confusion are: (1) strength of the plaintiff's mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and likely degree of purchaser care; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines. *Id.* at 348-54. If the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is

1  unlikely, the complaint will be dismissed.  *See*, *e.g.*, *Toho Co. Ltd. v. Sears,*

2  *Roebuck & Co.*, 645 F.2d 788, 790-791 (9th Cir. 1981) (affirming district court's

3  dismissal of trademark claims at the pleading stage following analysis under

4  *Sleekcraft*); *Murray*, 86 F.3d at 861 (same).

5       The Ninth Circuit urges "pliant" application of these factors: *i.e.,* the factors'

6  relative importance—and whether they should all be applied—depends on the facts

7  of each case.  *See Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 942

8  (9th Cir. 2002).  Indeed, a single factor can be dispositive in a given case.  *See*

9  *Murray*, 86 F.3d at 861.  The factors "are a guide to determine whether consumer

10  confusion is likely and are not to be applied mechanically."  *Delta Forensic Eng'g,*

11  *Inc. v. Delta V Biomechanics, Inc.*, 402 F. Supp. 3d 902, 907 (C.D. Cal. 2019).

12  "[T]he resolution of one factor will likely influence the outcome and relative

13  importance of other factors."  *Id.*  "[I]t is often possible to reach a conclusion with

14  respect to likelihood of confusion after considering only a subset of the factors[.]"

15  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir.

16  1999).

17       **A.      *Plaintiffs Have A Weak Mark In A Crowded Field.***

18       As an initial matter, Plaintiffs' mark is weak because many entertainment

19  programs contain the common terms "killer" and "confession," some existing

20  decades before Netflix or Plaintiffs used such terms.  *See supra* at 4-5.  Thus, in

21  this "'crowded' field of look-alike marks, each member of the crowd is relatively

22  'weak' in its ability to prevent use by others in the crowd."  2 McCarthy on

23  Trademarks and Unfair Competition § 11:85 (5th ed.).

24       **B.      *The Lack Of Relatedness Of The Goods And Services Precludes Any***

25            ***Likelihood Of Confusion.***

26       The relatedness or proximity of goods is measured by whether the products

27  are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in

28  use and function.  *Sleekcraft*, 599 F. 2d at 350.  Here, Plaintiffs have not (and

Mitchell
Silberberg &
Knupp LLP

13

1  cannot) plead facts showing that the goods produced by Netflix are related or

2  sufficiently similar to those offered under the AKC Logo or otherwise produced by

3  Plaintiffs.[7]  Under *Twombly*, 550 U.S. at 555, this is reason enough for wholesale

4  dismissal of Plaintiffs' claims.

5      Moreover, as a matter of law, the goods and services using the marks at

6  issue are dissimilar.  *See Newton v. Thomason*, 22 F.3d 1455, 1462 (9th Cir. 1994)

7  (holding that music production and performances were "completely unrelated" to a

8  television series).  Plaintiffs' consumers would encounter the AKC Logo when

9  purchasing tickets to live musical performances, purchasing AKC's audio

10  recordings, or purchasing AKC-related merchandise.  Complaint ¶ 10.  In contrast,

11  Netflix's consumers would encounter the Docuseries only on Netflix or via

12  marketing materials for the Docuseries.  Complaint ¶ 7.  Fundamentally, the goods

13  or services that Plaintiffs and Netflix offer ***are not related or sold to the same class***

14  ***of purchaser***, and have ***dissimilar uses and functions***.  As explained in *Sleekcraft*,

15  "***[i]f the goods are totally unrelated, there can be no infringement because***

16  ***confusion is unlikely***."  599 F. 2d at 348.  Put differently, Plaintiffs' claims of

17  consumer confusion arising from Netflix's use of "The Confession Killer" fail for

18

19

20

21  [7] *See Murray*, 86 F.3d at 860-61 (dismissal appropriate at the pleading stage where

22  plaintiff's trademark for "America Speaks" was used for his "man-on-the-street" market research business for use in television commercial advertising while the

23  defendant CNBC provided a talk-show television program entitled "America's Talking" to cable television viewers); *Robinson v. Hunger Free Am., Inc.*, 2018

24  WL 1305722, at *4 (E.D. Cal. Mar. 13, 2018) (dismissing trademark infringement

25  claim at the pleading stage because "the types of goods utilizing the 'Hunger Free America' mark are dissimilar. Plaintiff's consumers would encounter the [] mark

26  when purchasing a t-shirt. . . but Defendant's participants would encounter the

27  mark when utilizing hunger-relief programs or engaging in an anti-hunger program

28  sponsored by Defendant").

the simple reason that Plaintiffs have not alleged that they produce television programming.[8]

### C.   The Parties' Marks Are Dissimilar And Encountered In Completely Different Ways In The Marketplace.

It is axiomatic that marks must be viewed in their entireties when determining whether they are "similar" for purposes of the third *Sleekcraft* factor. *See Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156, 1164 (N.D. Cal. 2011) (explaining that courts assess the similarity of marks in "appearance, sound, and meaning" and "consider[] [the marks] in their entirety and as they appear in the marketplace").  Here, the marks are plainly different.

The trademark rights enumerated in Plaintiffs' registration for the AKC Logo only cover a specific, stylized design consisting of the words "A Killer's Confession" with "stylized droplets around the wording."  *See* Complaint, Ex. 1. By contrast, Netflix uses the phrase "The Confession Killer," with no droplets around the wording and accompanied by an identifier of the source of the Docuseries: the term "Netflix" or Netflix's logo.  *See* Complaint, Ex. 2; Docuseries, RJN, Ex. A; *see also Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984).  Plaintiffs concede as much in their Complaint, always using the word "Netflix" to describe the source of the Docuseries.  *See supra* at 3. Such clear labeling or emphasis on "house marks"[9] eliminates the risk of confusion.  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d

---

[8] Nor have Plaintiffs provided any evidence that they intend to expand into the television programming space.  So the "likelihood of expansion" factor favors Netflix as well .

[9]  In the context of film and television programing, a "house mark" is often used to identify the provider of a wide variety of programming.  *See*, *e.g.*, *MGFB Properties, Inc. v. Viacom Inc.*, 54 F.4th 670, 682 (11th Cir. 2022) (Viacom's "house mark" for its *Jersey Shore* spin-offs was "MTV").

1137, 1153-54 (9th Cir. 2011); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2022).

To the extent Plaintiffs allege that the parties' shared use of a scripted font in their respective marks weighs in Plaintiffs' favor on this factor, they are incorrect. *See, e.g.*, *Conte v. Newsday, Inc.*, 2013 WL 978711, at *21 (E.D.N.Y. 2013) (use of similar fonts only marginally relevant where defendant vitiated any potential confusion by including its well-known house mark).  In any event, aside from both being script, the fonts of the parties' respective marks are nothing alike.  In the AKC Logo, the first letters of each word are nearly three times the size of the rest of the letters.  Complaint, Ex. 1.  In addition, the first letters extend well below the other letters to form what look like blood spatters (with droplets even being an element identified in the logo's description with the USPTO).  Complaint, Ex. 1. In contrast, Netflix's use of the title "The Confession Killer" is in the same font as Lucas's own confession notes.  *Compare* Docuseries, RJN, Ex. A, Episode 1 (~13:30-13:51), *with* Complaint, Ex. 2.  There are no stylized elements in the Netflix title, and the first letter of each word is the same size as the rest of the letters.

Ultimately, "the overall impression created by the [marks] and the context in which they are found and [a] consider[ation] [of] the totality of factors that could cause confusion among prospective purchasers," establishes, as a matter of law, that the two marks are dissimilar and would not "provoke confusion among prospective purchasers." *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998); *Lindy Pen*, 725 F.2d at 1245 (identical word marks on pens dissimilar given omnipresence of company marks and logos); *Embarcadero Techs., Inc. v. Rstudio, Inc.*, 105 U.S.P.Q.2d 1825 (T.T.A.B. 2013) (one letter difference sufficient to distinguish marks where the marks engender different commercial impressions).

**D.    *Plaintiffs Do Not Plausibly Allege Any Actual Confusion.***

"[T]he Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another."  *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005).  "Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally."  *Id.*  Furthermore, a "lack of evidence about actual confusion after an ample opportunity for confusion can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion."  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002).

Plaintiffs' purported "examples" of consumer confusion—namely, the alleged "boycotting of AKC on the erroneous belief . . . that AKC is a supporter of serial killers," death threats, and other "associat[ion]" between AKC and serial killers—fail to allege legally relevant actual confusion.  Complaint ¶ 19.  Significantly, Plaintiffs never allege that *potential consumers* of its services have been confused, which is fatal to their claims.[10]

**E.    *The Parties' Marketing Channels Are Dissimilar.***

Differences in the parties' marketing channels "weigh[] heavily" in the ultimate assessment of whether there is a likelihood of confusion."  *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1084 (9th Cir. 2005).  Plaintiffs do not allege that the parties use similar marketing channels.  *See generally* Complaint.  Thus, as a matter of law, this factor favors Netflix.

---

[10] Plaintiffs also fail to acknowledge that perhaps the association between their band and "killers" might have something to do with the fact that their band is named "A Killer's Confession"; their recent tour was coined "Year of the Killer's Tour"; their lead singer wears costumes that evoke serial killers; they have released songs with titles such as "Roots Bloody Roots," "Monster," "Final Breath," and "Knife from Behind"; and their merchandise encourages people to "kill pedophiles."  *See supra* at 2.

Even to the extent Plaintiffs' Complaint could be construed liberally to indicate that the parties' shared use of the Internet for marketing constitutes similar marketing channels, such an argument would be misplaced, as a matter of law. Offering music for sale online is insufficient to support likelihood of confusion. *Madacy*, 421 F.3d at 1084 ("offer[ing] CDs for sale over the internet in general, and on 'Amazon.com' in particular," failed to demonstrate likelihood of confusion); *see also Network Automation*, 638 F.3d at 1151 ("[T]his factor becomes less important when the marketing channel is less obscure. Today, it would be the rare commercial retailer that did not advertise online.").

In any event, the parties' marketing channels do not overlap. Plaintiffs offer their goods and services on their page on the e-commerce platform Shopify (*see* https://akillersconfession.myshopify.com/?fbclid=IwAR3fFFEi2eWXXuizMbCxf5 JjpARYnVygVVJFhGmtedL0vgOTldKhLsJ3m7Q), their Facebook page (*see* https://www.facebook.com/akillersconfession/), and on music streaming services (*see*, *e.g.*, https://open.spotify.com/artist/5zLrMhpswOj8Wk9EK1PTDM). Netflix does not offer to stream the Docuseries on any of these platforms. The Docuseries is only available to stream on Netflix (after a consumer has already purchased a subscription). *See*, *e.g.*, Complaint ¶ 7; *see also The Confession Killer*, Netflix (2019), https://www.netflix.com/title/80213588 ("Watch The Confession Killer | Netflix Official Site"). This factor thus weighs against Plaintiffs. *See Groupion*, 826 F. Supp. 2d at 1164 ("To the extent the companies market or advertise outside of the internet, their marketing channels differ … Groupon engages in substantial television, radio, and billboard advertising. [The plaintiff] does not.").[11]

---

[11] *See also Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1127 (S.D. Cal. 2014) ("Where both parties utilize the internet to market the products at issue . . . this factor carries little weight in the likelihood of confusion calculation") (citing *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004)).

**F.      The Degree Of Care Exercised By Consumers Eliminates Any Possibility Of Confusion.**

Courts assess this factor based on "the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353.  Confusion is less likely where buyers exercise care and precision in their purchases such as for "sophisticated items." *Dfinity Found. v. Meta Platforms, Inc.*, 2022 WL 16857036, at *9 (N.D. Cal. Nov. 10, 2022).  Notably, purchasers of musical albums are considered to be very sophisticated purchasers, and are able to differentiate between styles of music, such as jazz and hip hop, in making purchasing decisions.  *See Sunenblick v. Harrell*, 895 F. Supp. 616, 634 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 684 (2d Cir. 1996) ("buyers of musical recordings are relatively sophisticated consumers whose purchasing decisions are driven by a recognition of and search for a particular artist or composition.").  Furthermore, the Ninth Circuit has acknowledged that "the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace . . . consumers who use the [I]nternet for shopping are generally quite sophisticated . . ." *Network Automation*, 638 F.3d at 1152.

Thus, since a heightened "sophistication 'of consumers usually militates against a finding of likelihood of confusion[,]'" consideration of this factor supports a finding that there is no likelihood of confusion.  *Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1127 (C.D. Cal. 2003).

**G.      Netflix's Intent In Selecting Its "The Confession Killer" Title Had Nothing To Do With Plaintiffs.**

For this factor to support a likelihood of confusion, Plaintiffs must allege that Netflix "intended to profit by confusing consumers." *Toho*, 645 F.2d at 791 n.2.  Plaintiffs have made no such allegations.  To the contrary, Netflix's identification of the Docuseries with the "Netflix" brand makes clear that Netflix wants consumers to watch the Docuseries, remember that it was produced by

**MOTION TO DISMISS COMPLAINT IN ITS ENTIRETY**

Netflix, and then return to Netflix to continue watching the Docuseries or to stream Netflix's other offerings.  This "clear labeling of [the Docuseries] with [Netflix's] brand negates any inference of intent to trade on [Plaintiff's] mark."  *Skechers U.S.A., Inc. v. Vans, Inc.*, 2007 WL 4181677, at *8 (C.D. Cal. Nov. 20, 2007).

### H.    The Parties Are Unlikely To Expand Into Each Other's Sphere Of Business.

"To resolve this factor, [courts] must determine whether existence of the allegedly infringing mark is hindering the plaintiff's expansion plans."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005).  Only a "'***strong possibility***' that either party may expand his business to compete with the other will weigh in favor of finding that the [] use is infringing."  *Pascucci, Inc. v. Caffe Pascucci Torrefazione S.P.A.*, 2011 WL 13220127, at *4 (C.D. Cal. July 8, 2011) (quoting *Sleekcraft*, 599 F.2d at 354).  Because Plaintiffs fail to allege any intention of expansion into Netflix's line of business—let alone a "strong possibility" of expansion, as required—this factor also weighs against a finding of likelihood of confusion.

\* \* \*

In sum, even were the Court to reach the *Sleekcraft* factors, Plaintiffs fail to state a claim upon which relief can be granted.

## VI.    CONCLUSION

For the reasons set forth herein, Netflix requests that the Court dismiss all of Plaintiffs' claims without leave to amend.

Dated: May 5, 2023            Mitchell Silberberg & Knupp LLP

By:    /s/Robert H. Rotstein
Robert H. Rotstein
Emily F. Evitt
Attorneys for Defendant Netflix, Inc.

Mitchell
Silberberg &
Knupp LLP

20

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

The undersigned, counsel of record for Defendant Netflix, Inc., certifies

3

that this Memorandum of Points and Authorities contains 5,983 words and does

4

not exceed 25 pages, which complies with the word limit of L.R. 11-6.1 and the

5

Court's Standing Order dated June 5, 2020.

6

7

Dated: May 5, 2023                      MITCHELL SILBERBERG & KNUPP LLP

8

By:   /s/Robert H. Rotstein

9

Robert H. Rotstein

10

Emily F. Evitt
Attorneys for Defendant Netflix, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28